KINGAN & CO., INCORPORATED, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 506-R.   Promulgated June 27, 1949.

*Edward Scheidenhelm, Jr., Esq.*, for the petitioner.
*Ralph G. Cornell, Esq.*, for the respondent.

1132

**OPINION.**

LeMire, *Judge*: The petitioner's contention is that its profits in the fiscal year 1944 on renegotiable canned meat sales, as shown in the departmental accounting records, should be adjusted by the deduction of a part of the losses in other departments for that year. This would have the effect of reducing profits on renegotiable canned meat sales from $413,267.91 to $216,000 for that year.

The respondent argues that the departmental accounting records of the petitioner's canned meat department accurately reflect the costs and profits of that department, and that an allocation of losses from other departments to the canned meat department would distort the profits of that department. The respondent further argues that, even if good accounting practice required an allocation of any primary department losses to the secondary departments, the canned meat depart-

ment should be charged only with that portion of the primary department losses applicable to the specific kinds and quantities of meats transferred to it by such primary departments.

The issue is thus fundamentally reduced to a question of the reasonableness of the petitioner's accounting practices. The evidence offered by the parties is highly contradictory as to what proper accounting practices are in a business such as the petitioner's.

As a general meat packer, the petitioner is engaged in a highly complex business. Unlike most manufacturers, who assemble raw materials to produce an ultimate product, the petitioner buys livestock on the hoof as its raw material and then breaks that material down, selling many different parts of it in different stages of processing. This necessarily creates serious accounting difficulties in evaluating the costs of meat products in their various stages of processing.

The petitioner's accounting system is a well organized and complete one for internal control and management purposes. Each department maintains a separate accounting system, which purports to charge that department with costs and credit it with the proceeds of sales or transfers of its products as though it were a separate concern in competition with other concerns engaged in the same class of business. At the end of the fiscal year the accounting records of each department purport to show theoretical net profits or losses of that department as an individual unit. However, the charges and credits made to each department are largely arbitrary and theoretical, so that there is no departmental record of actual costs which would make possible a calculation of actual profit from any particular product or sale or any direct tracing of actual costs of any one product through successive processes. Petitioner calculates its actual profits on its over-all operations after reconciliation of its departmental accounting records into its general accounting records.

For the year here involved the departmental accounting records of the petitioner show book profits in some departments and book losses in others. A profit is shown for each secondary department, including the "canned meats" department, and losses are shown for most of the primary departments. The records show losses totaling $1,797,546 for the primary departments and profits totaling $3,074,032 for the secondary departments, including $1,013,855 of profits from canned meats, or a net profit of $1,276,486 for the petitioner's Indianapolis plant. Net profits of $514,914 were earned from other operations outside the Indianapolis plant which are not involved here, since all renegotiable sales were from the Indianapolis plant.

The petitioner allocated the losses from primary departments to the secondary departments on the basis of secondary department profits. Since canned meat department profits were approximately 33 per cent

of total secondary department profits, the petitioner charged approximately 33 per cent of the primary department losses to this department, although sales of canned meat totaled less than 10 per cent of total sales. The allocation of losses was made without any breakdown of the losses to the specific kinds or quantities of meat which were handled by the canned meat department, but was made solely on the relative book profits and losses of each department.

We agree with the respondent that such an allocation is an arbitrary one and is not a reasonable or logical measurement of profits on canned meat sales. However, we also agree with the petitioner that some allocation of primary department losses to canned meat department profits is proper, since the primary departments functioned at least partially for the benefit of the secondary departments. Some primary department losses were undoubtedly sustained only to supply the secondary departments with raw materials ultimately profitable to petitioner at prices set by the OPA which would not cover petitioner's total costs in the primary departments.

The fact that the percentage of the canned meat department's profits to that department's sales was several times as great as the percentage of total profits to total sales is due primarily to the fact that sales from secondary departments yield a larger percentage of profits on sales than do sales from primary departments because of their higher labor and investment costs and slower turnover.

Since costs of separate parts of slaughtered livestock are at best only approximations, accounting values are necessarily only estimates. The petitioner assigns costs to departments based on these estimates and maintains departmental accounting records based on them for control purposes. It then consolidates all its departments at the end of its accounting year to determine its net over-all profits. The calculations favoring one department at the expense of another are balanced out at the end of the accounting year in computing the over-all profits from operations. While this system may be accurate enough for the purpose of determining the company's over-all profits, it might result in a wide distortion of the actual profits attributable to the separate departments. This was particularly true in 1944, because OPA fixed prices were used as the transfer prices from primary to secondary departments, although petitioner and other packers were at that time protesting to the OPA that those prices were not high enough to cover its costs on primary department meat products. It is not reasonable to confine the petitioner to the use of the canned meat department records alone in determining the profits of that department, as the respondent would have us do, since it is apparent that some portion of primary department losses were attributable to products on which the canned meat department made its profits.

Neither is it reasonable to make the arbitrary allocations of primary department losses to the canned meat departments which the petitioner urges us to do, since that allocation unduly burdens this department with losses from primary departments on products not handled by it.

After consideration of all the factors involved, we think that some allocation of primary department losses must be made to the canned meats department. Any attempted allocation of actual costs to the renegotiable products processed by the canned meat department would merely result in the substitution of another set of approximations for that proposed by petitioner.

Consideration and analysis of all factors pertinent to the petitioner's renegotiable profits outlined by section 403 (a) (4) of the Sixth Supplemental National Defense Appropriations Act, 1942, as amended by Title VII of the Revenue Act of 1943, as well as other factors urged by the parties, indicate that there are both favorable and unfavorable factors influencing a determination of a reasonable and just profit for the petitioner on its renegotiable sales. For instance, factors in the petitioner's favor are that it cooperated with the war effort in attempting to improve quality and quantity of production; its costs and profits on its over-all volume of production were reasonable; its business and production efficiency was good; and the character of its business was highly complex. Unfavorable factors include the fact that its war production and peacetime production were of substantially the same nature; its profits represent a higher ratio on its net worth in wartime than in peacetime; and its capital risks on its war contracts were only normal business risks.

Giving proper weight to all factors involved and making such adjustments to the cost and profit figures furnished by the petitioner as we think are required, we have arrived at the conclusion that the profits reasonably attributable to petitioner's renegotiable canned meat sales were $341,000. We think that a reasonable and just profit for the petitioner on its renegotiable canned meat sales was $251,000. Therefore, we determine that the petitioner's renegotiable profits for the fiscal year 1944 were excessive in the amount of $90,000.

Reviewed by the Court.

*An order will issue in accordance herewith.*

KERN, *J.*, concurs only in the result.

———

TURNER, *J.*, dissenting: The facts found, in my opinion, not only fail to justify any conclusion that the respondent's determination of excessive profits was erroneous, but, when most charitably viewed, indicate that the petitioner, due to the defects in its accounting system, has

found it impossible to give an informative picture of its business as between that which is subject to renegotiation and that which is not.

The findings upon which the conclusion of the majority is based appear to me to be contradictory. First, it is shown that the accounts of the petitioner as between departments are kept, not with any real effort at exactness, but are based on estimates, "test costs," or "spot check costs." There is then a finding that prices credited to the primary department "during the period here involved" for the products transferred to the secondary department were set by the Office of Price Administration. It is then found that the parties are not in disagreement as to the figures shown by the books, which figures are then set forth, disclosing a substantial loss in the primary department and very substantial profits in the secondary department. Next, it is shown that in 1944, the year here in question, the departmental accounts showed profits in some places and losses in others and that the individual departments were credited or charged "with the estimated market prices" of the products transferred between the departments for further processing, without attempting to show initial costs or other exact facts through the consecutive steps of the operation up to the sale. After the making of the specific finding as to 1944, just referred to, that year being the year in question, the facts next jump back to a statement that from 1943 to 1945 the OPA fixed maximum market prices for meat packers' products, which, in some instances, did not permit the petitioner to recover the total costs of livestock and processing expenses which went into its products.

After these contradictory findings, it is then reasoned that part of the loss, shown by petitioner's books as having been sustained by the primary department, should be allocated to the secondary department, thereby reducing the excessive profits below that shown as determined by the respondent in its unilateral order. There is no attempt at showing the costs of the respective departments, and the Court is accordingly in the dark as to the facts, if any there be, upon which to base a conclusion as to what part, if any, of the primary department costs may properly be applied to reduce the amount of excessive profits determined by the respondent. As I read the case, the petitioner has shown that its books of accounts as between the departments are of no probative force, and it thinks, but has not shown, that some of the profits of the secondary department should be allocated to nonrenegotiable business. In short, petitioner has come before the Tax Court and confessed its inability to prove its case. In that situation, the respondent's determination should not be disturbed. Accordingly, I note my dissent.

DISNEY, *J.*, agrees with this dissent.